```
UNITED STATES DISTRICT COURT              (ECF)
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - -:
SHIRLEY Y. KWAN,                         : 05 Civ. 0459 (SHS) (JCF)
                                         :
              Plaintiff,                 :        MEMORANDUM
                                         :        AND  ORDER
      - against -                        :
                                         :
ALAN M. SCHLEIN, MICHAEL L. SANKEY,:
CARL R. ERNST, J.J. NEWBY, PETER J.:
WEBER, BUSINESS RESOURCE BUREAU,         :
INC., BRB PUBLICATIONS, FACTS ON         :
DEMAND PRESS, SCHLEIN NEWS BUREAU, :
JOHN/JANE DOE,                           :
                                         :
              Defendants.                :
- - - - - - - - - - - - - - - - - - - -:
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE
```

In this copyright infringement action, the plaintiff, Shirley Kwan, has moved for leave to amend the complaint to assert an infringement claim against the principal author of a book entitled "Find It Online."  The remaining defendants in the case are the principal author, Alan Schlein, and the publisher, Better Resource Bureau, Inc. ("BRB").  On two prior occasions, I denied the plaintiff leave to amend the complaint to add such a claim against Mr. Schlein because the plaintiff's proposed pleadings did not include any allegations that could support a claim that the plaintiff was the sole author, rather than a co-author or editor, of any part of "Find It Online."  Kwan v. Schlein, No. 05 Civ. 0459, 2008 WL 506337, at *3 (Feb. 21, 2008); Kwan v. Schlein, 246 F.R.D. 447, 452 (S.D.N.Y. 2007).  Most recently, in the February 21 Order, I found that while Ms. Kwan alleged that she had "authored

1

substantial portions of the First Edition," she had failed to meet the requirements of Rule 8 of the Federal Rules of Civil Procedure by identifying which portions of the book she had independently authored, if any.  <u>Kwan</u>, 2008 WL 506337, at *3.

Now, the plaintiff has submitted 51 pages of the First Edition, with excerpts purportedly authored by her marked in yellow.  (Proposed Third Amended Complaint, ¶ 10 & Exh. 9 ("First Edition")).  The portions that are marked range from segments of sentences to entire paragraphs.  They come from seven different chapters in the book, though the greatest number of pages (16) are from Chapter 3, entitled "General Search Tools."

This is not the first time the plaintiff has submitted documents purportedly demonstrating her contribution to "Find It Online."  In 2006, when the plaintiff made her third motion to reconsider the Court's decision dismissing some of her claims, she appended several drafts of Chapter 3 (then Chapter 4) that predated the final version.  (Exhs. A-C to Supplemental Opposition to Defendant Alan M. Schlein's Opposition to Plaintiff's Second Motion for Reconsideration and In Support of Def. Schlein's Cross-Motion for Reconsideration dated Nov. 14, 2006 ("11/14/06 Supp. Opp.")).  The first draft was the draft that Mr. Schlein initially forwarded to Ms. Kwan for review and includes her underlined notes.  (11/14/06 Supp. Opp. at 3 & Exh. A ("Version 1")).  The second draft, or "rough draft version 5," also identified Ms. Kwan's

comments and changes with capital letters and underlining. (11/14/06 Supp. Opp. at 3-4 & Exh. B ("Version 5")). The third draft, "rough draft version 6," is one that Ms. Kwan created from prior drafts, incorporating a number of her editing suggestions. (11/14/06 Supp. Opp. at 4 & Exh. C ("Version 6")). According to Ms. Kwan, "the differences between Exhibits B and C reflect[ed] [her] contribution to version 6." (11/14/06 Supp. Opp. at 4).

I have reviewed the 16 pages of Chapter 3 submitted in support of the plaintiff's pending motion to amend the complaint and the earlier drafts of Chapter 3 submitted in support of her prior motion to reconsider. It is evident that the words and ideas reflected in the highlighted portions of the current submission are more often than not the same words and ideas that appeared in Mr. Schlein's earlier drafts.

For example, Ms. Kwan marked in her current submission a paragraph that reads:

> In pre-computer days, a library's card catalog was a chest of drawers that contained a card for each book. On each card was listed the book's name, author, publisher and other information. In other words, a card catalog was a database; each card was a record and each piece of information (name, author and so on) was a field.

(First Edition at 25). By comparison, an excerpt from the first draft of Chapter 3, which Ms. Kwan acknowledged as Mr. Schlein's writing, reads:

> Do you remember going to the card catalogue at the library? There was a chest of drawers that contained all the books in the library and on each card within the

catalogue were the name of the book, the author, the publisher and a bunch of other information.  This is exactly the same way databases work[.] The database is the card catalogue, records within it are each card and fields are the pieces of information that identify specific types of information on the record, like the name of the author.

(Version 1 at 11th unnumbered page).

As another example, Ms. Kwan claims she wrote a passage that reads:

Search engines differ in the way they work.  Say you want more information about chocolate-flavored peanut butter.  One search engine or subject directory might search its database first for "chocolate."  Then it takes <u>those</u> results and searches them for the additional word "peanut."  Then it takes those results and scans for the word "butter," and presents you with the results.

(First Edition at 28).  An excerpt from the first draft of Chapter 3 shows that Mr. Schlein had written, "Search tools work in a few different ways.  Some search engine and directories searche[s] its database, first for chocolate.  Then with whatever it found for chocolate, it searches for peanut and then for butter."  (Version 1 at 7th unnumbered page).  By the fifth version, the passage had been revised to resemble word-for-word what appeared in the First Edition.  (Version 5 at 5th unnumbered page).  There were no changes to this passage between the fifth and the sixth versions.

Ms. Kwan also claims that she wrote significant portions of the section titled "Search Tools & HTML," including a passage that reads, "On some search engines, terms are given more weight if they have meta-tags.  Certain pages are ranked higher among search

4

results than others.  Knowing how to maneuver these meta-tags has allowed people to scam the system."[1]   (First Edition at 48). Meanwhile, the analogous passage in the first draft of Chapter 3 reads, "A metatag gives the term more importance in the ranking of the page than a mere mention on a page.  Repeated use of a phrase will result in higher placement on some search engines.  This has allowed people to scam the system."  (Version 1 at 6th unnumbered page).  The passage remained unchanged through the sixth version. These examples are not exhaustive.

As the parties are well aware, a copyright litigant may not maintain an action against a joint author for infringement. However, where it is not clear that the requirements for joint authorship have been met, the litigant is not precluded from bringing an action for infringement with respect to any original contribution of hers that was incorporated into the published version of the work in question.  See Kwan, 2008 WL 506337, at *2-3.  In my February 21 Order, I provided a number of examples drawn from other opinions illustrating the type of "original and independent" authorship that the plaintiff would have to come forward with to state such a claim.  See id.; Thomson v. Larson, 147 F.3d 195, 198 & n.10, 200-01 (2d Cir. 1998) (non-de minimis copyrightable contribution included creation of character elements,

---

[1] Ms. Kwan highlighted all of this passage except the words "to scam the system."  (First Edition at 48).

dialogue, and sound lyrics); Johnson v. Arista Holding, Inc., No. 05 Civ. 9645, 2006 WL 3511894, at *2 (S.D.N.Y. Dec. 5, 2006) (session musician's original notes and chords incorporated into studio recording); Maurizio v. Goldsmith, No. 96 Civ. 4332, 2001 WL 1568428, at *2-3 (S.D.N.Y. Dec. 5, 2001) (plaintiff's outline and draft chapters incorporated into final work). I also specifically noted that the plaintiff's assertion that BRB acknowledged she had edited and re-written portions of Mr. Schlein's drafts "to get them in acceptable format" was not helpful, because it "[did] not establish that Ms. Kwan independently authored anything." Kwan, 2008 WL 506337, at *3. It is not likely that Ms. Kwan or her counsel could have confused independent authorship for "editing" or "reworking" Mr. Schlein's writing. I therefore have serious concern about the plaintiff's representation in her motion to amend that she "authored" the highlighted portions.

I note that the plaintiff was previously cautioned that any allegation of authorship she made in support of an infringement claim against Mr. Schlein would be subject to the requirements of Rule 11. Kwan, 246 F.R.D. at 452. In the case of Ms. Kwan, sanctions may be imposed if the Court finds that her contentions lack a basis in fact. Fed. R. Civ. P. 11(b)(3). In the case of her attorney Jeffrey Sonnabend, sanctions may be imposed for the failure to conduct a reasonable investigation of the facts in light of the Court's prior elucidations of the type of authorship his

client would ultimately be asked to prove.   I expect that Mr. Sonnabend would have, at a minimum, reviewed his client's prior submissions to the Court.

Accordingly, Ms. Kwan and her counsel are ordered, on or before June 23, 2008, to (1) withdraw or correct the plaintiff's motion to amend, or (2) show cause why they should not be sanctioned on the ground that Paragraph 10 and Exhibit 9 of the plaintiff's Proposed Third Amended Complaint submitted in support of the motion violate Rule 11(b)(3) of the Federal Rules of Civil Procedure.   Determination on the defendants' cross-motion for sanctions pursuant to the inherent powers of the Court and pursuant to 28 U.S.C. § 1927 will be deferred until after the Rule 11 issue is resolved.

SO ORDERED.

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated: New York, New York
       June 9, 2008

Copies mailed this date:

Jeffrey Sonnabend, Esq.
SonnabendLaw
600 Prospect Avenue
Brooklyn, New York 11215

Lawrence D. Bernfeld, Esq.
Graubard Miller
405 Lexington Avenue, 19th Floor
New York, New York 10174

Mathew P. Barry, Esq.
McNamee, Lochner, Titus & Williams, P.C.
677 Broadway
Albany, New York 12207